The LEXINGTON HERALD LEADER
COMPANY, INC., Appellant
Cross Appellee,

v.

Honorable Charles M. TACKETT, Judge,
Fayette Circuit Court, Appellee, and The
Alleged Minor Victims in Common-
wealth v. Payne, Fayette Circuit Court,
Intervenors Cross Appellant.

The ALLEGED MINOR VICTIMS in
Commonwealth v. Payne, Fayette
Circuit Court, Appellants.

v.

The LEXINGTON LEADER COMPANY,
INC. and Honorable Charles M. Tackett,
Judge, Fayette Circuit Court, Appellees.

Supreme Court of Kentucky.

June 24, 1980.

Lyle G. Robey, Stoll, Keenon & Park,
Lexington, for Lexington Herald Leader
Co., Inc.

Charles M. Tackett, Lexington, pro se.

Kay E. Sauer and Joshua E. Santana,
Terry R. Anderson, William C. Wessell, Os-
car H. Geralds, Jr., Lexington, for alleged
minor victims.

LUKOWSKY, Justice.

This is an appeal from the denial by the
Court of Appeals of an application for relief
in the nature of prohibition. The sole issue
presented is whether a trial judge was pro-
ceeding erroneously when at the request of
10 male victims under the age of 12, and
without objection by the defendant, he or-

dered the courtroom closed to the entire public and press during their testimony. The order also provided that either the tapes or transcripts of the testimony of these witnesses would be released to the public at the end of the trial. The reason given by the trial judge for his action was that "it would greatly minimize the psychological and emotional trauma to the alleged juvenile victims."

■ It is evident from the record that the trial judge was laudably concerned with the welfare of the minor victim's witnesses. Indeed, at first glance it does not appear that the court improperly exercised its discretion in acting to protect the minors. It is well recognized that a trial judge has inherent authority to exclude spectators from the courtroom in order to protect witnesses where, as here, there has been a finding by the court of potential harm which will result from unrestricted public attendance.

"It cannot be doubted that a trial judge has authority to exclude the young from his court room during a trial where unsavory and vulgar evidence will be produced. *Also, he may protect a child witness, who from the nature of the case must testify to revolting facts, by excluding* morbid, prurient, curious and sensation-seeking *persons from the court room*, so long as he does not abuse his discretion and deprive the accused of the right to have his family and friends present as well as a reasonable portion of the public. Such limited exclusion of people from the court room when resorted to in the exercise of a reasonable and sound discretion does not violate Sec. 11 of the Constitution granting the accused a public trial."

*Beauchamp v. Cahill*, 297 Ky. 505, 508, 180 S.W.2d 423, 424 (1944) (emphasis added); E. g., *Johnson v. Simpson*, Ky., 433 S.W.2d 644, 646 (1968); *Hackett v. State*, 266 Ind. 103, 360 N.E.2d 1000, 1004 (1977); *People v. Jelke*, 308 N.Y. 56, 123 N.E.2d 769, 772, 48 A.L.R.2d 1425 (1954). *Commonwealth v. Knight*, 469 Pa. 57, 364 A.2d 902, 907 (1970);

*United States ex rel. Smallwood v. LaValle*, E.D.N.Y., 377 F.Supp. 1148, (1974), *aff'd* 2d Cir., 508 F.2d 837, *cert. denied*, 421 U.S. 920, 95 S.Ct. 1586, 43 L.Ed.2d 788 (1975). *See* 23 C.J.S. *Criminal Law* Sec. 963(3); 21 Am. Jur.2d *Criminal Law* Sec. 266; Annot., 48 A.L.R.2d 1436, 1450 Sec. 8.

■ But, upon reflection, error below becomes apparent. Public trials are highly favored in the Commonwealth. The courtroom doors may be closed to the general public only on a rare occasion after a determination that in no other way can justice be served.

"The principle that justice can not survive behind walls of silence is so deeply imbedded in our Anglo-American judicial system as to give our people in today's modern society a deep distrust of secret trials. One of the strongest demands of a democratic system is that the public should know what goes on in their courts. This demand can only be met by permitting them to be present in person and by permitting the press who have the facilities to properly inform them to be present upon their behalf. It is insisted by some the right to public trial is solely for the benefit of the criminal defendant and if he has no objection to a closed trial then the public should not be permitted to object. This contention overlooks the fact that the public is a party to all criminal proceedings. The proceeding is prosecuted in the name of the public. In our opinion there is nothing that better protects the rights of the public than their presence in proceedings where these rights are on trial. The news media should be accorded some priority in this respect for they have the facilities to disseminate the information of what transpires to a much broader audience than those who can gather in a crowded court room."

*Johnson v. Simpson, supra* at 646. (Citations omitted).

■ The most important characteristics of the judiciary are integrity and credibili-

ty. Courtrooms are kept open not so that members of the public can expose wrongdoings; rather, they are open to allow the citizens to see for themselves how their laws are impartially applied. It is to the benefit of a free society that judicial proceedings be publicly conducted. Not only are all citizens to be treated equally under the law—they must be able to see that they are equally treated in their courts.

The trial judge took cognizance of the delicate and distasteful matters about which the young witnesses were to testify and decided that they would suffer less embarrassment and emotional trauma if such testimony were given in a closed courtroom. We do not quarrel with his concern. The problem is, however, that by the very nature of certain trials, civil as well as criminal, this embarrassment and emotional strain commonly occur. One can think of instances in trials involving rape, incest, sodomy, criminal conversation, paternity, child abuse, seduction of a minor, loss of consortium, alienation of affection, divorce, child custody, fraud, etc., where the witnesses, child and adult alike, will be greatly embarrassed and traumatized by testifying publicly. Yet this embarrassment and trauma has not been deemed sufficient justification to bar "a reasonable portion of the public" from these proceedings. *Beauchamp v. Cahill, supra.* Embarrassment and emotional trauma to witnesses simply do not permit a trial judge to close his courtroom to the entire public.

Our cases declare that representatives of the news media enjoy the same right of access to public information as is available to any other member of the public, but that this right does not exceed the right of any other member of the public. *Johnson v. Simpson, supra* at 647; *Courier-Journal and Louisville Times Co. v. Curtis,* Ky., 335 S.W.2d 934 (1959), *cert. denied,* 364 U.S. 910, 81 S.Ct. 272, 5 L.Ed.2d 224 (1960), *Secondary holding overruled, City of St. Matthews v. Voice of St. Matthews, Inc.,* Ky., 519 S.W.2d 811, 815 (1974). These same cases also recognize that the ability of news organizations to disseminate the information to a much larger segment of the interested public requires the court to accommodate the media even when only limited attendance by the public is appropriate. A fortiori, the trial judge should not close his courtroom to the entire press when any members of the public are to be admitted.

Other courts have recognized the propriety of closing a courtroom to the public in cases where identities of undercover agents were to be kept secret, *United States ex rel. Lloyd v. Vincent,* 2d Cir., 520 F.2d 1272, *cert. denied,* 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975), where a public appearance would likely place the witness's life or personal safety in danger. *State v. Gee,* 262 S.C. 373, 204 S.E.2d 727 (1974); *Commonwealth v. Burton,* 459 Pa. 550, 330 A.2d 833 (1974), or where trade secrets were to be placed in evidence. *State ex rel. Ampco Metal, Inc. v. O'Neill,* 273 Wis. 530, 78 N.W.2d 921, 62 A.L.R.2d 501 (1956). *See* 21 Am.Jur.2d *Criminal Law* Secs. 262–70; 75 Am.Jur.2d *Trials* Sec. 33; Annot., 62 A.L. R.2d 511. But, these issues are not before us, and we express no opinion upon them.

We are advised that the trial of the sodomy case has been completed and that its result is to be appealed. In the event that there should be a reversal and a new trial, the trial judge should be prohibited from excluding the entire public and press from the courtroom.

The judgment of the Court of Appeals is reversed and the cause is remanded to that court for the entry of a judgment consistent herewith.

All concur.